```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

TENIKA FONDREN,

    Plaintiff,

vs.                                          No. 2:17-cv-02519-SHM-dkv

AMERICAN HOME SHIELD CORPORATION,

    Defendant.
_____

           REPORT AND RECOMMENDATION ON DEFENDANT'S
      MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT
_____

    Before the court is the April 25, 2018 motion of the defendant, American Home Shield Corporation ("AHS"), to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration. (Mot. to Compel Arbitration, ECF No. 34.) In support of its motion, AHS filed a memorandum of facts and law, and a declaration of Kelley Bryant. (Mem., ECF No. 34-1; Bryant Decl., ECF No. 34-2.) The plaintiff, Tenika Fondren ("Fondren"), proceeding *pro se*, filed a "Motion to Deny Defendant's Motion to Compel Arbitration And to Dismiss Complaint" on April 30, 2018, which is in essence a response to AHS's motion to compel, and the court will treat it as such. (Pl.'s Resp., ECF No. 35.) AHS then filed a reply in support of its motion to compel arbitration on May 14, 2018. (AHS Reply, ECF No. 36.) Fondren filed a sur-reply to the AHS

reply on May 21, 2018, which will be disregarded. (Fondren Sur-reply, ECF No. 37.)[1] This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order, 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that the motion to compel arbitration be granted.

## I.    PROPOSED FINDINGS OF FACT

On July 21, 2017, Fondren filed a *pro se* complaint against AHS alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl., ECF No. 1.) Fondren filed a motion for leave to proceed *in forma pauperis* along with her complaint, (ECF No. 2), which the court denied on July 24, 2017. (ECF No. 7.) Fondren then paid the filing fee. (ECF No. 8.) Fondren initially served AHS on August 11, 2017, via a certified process server. (*See* Proof Service 2-3, ECF No. 10.) After the time for AHS to answer had expired, Fondren filed a motion for entry of default, (ECF No. 14), which the Clerk entered on October 2, 2017, (ECF No. 15). Subsequently, both parties filed various

---

[1] With respect to Fondren's sur-reply, the Local Rules only provide for a motion, a response, and a reply, and neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a sur-reply. (LR 7.2(c)). In this case, the Court has not requested a sur-reply from Fondren nor granted a request on the behalf of Fondren to file one.

2

responses and motions regarding the Clerk's entry of default, which the court treated as a motion by AHS to set aside entry of default and responses by each side to such motion. (*See* Order Granting Def.'s Mot. Set Aside Entry Default 2, ECF No. 21.) The court granted AHS's motion to set aside the entry of default on October 25, 2017, and gave Fondren an additional 30 days to re-serve AHS. (*Id.* at 6, 8.) The district judge affirmed the order setting aside entry of default on November 22, 2017, (ECF No. 25), and Fondren filed proof of re-service on December 20, 2017, (Proof Service, ECF No. 27). On January 10, 2018, AHS filed a motion to dismiss or, in the alternative, for a more definite statement. (ECF No. 28.) On April 4, 2018 the district judge adopted the report and recommendation denying AHS's motion to dismiss or, in the alternative, for a more definite statement. (ECF No. 32.) On April 25, 2018 AHS filed the motion to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration, which is currently before the court. (Mot. to Compel Arbitration, ECF No. 34.)

In support of its motion to compel arbitration, AHS asserts that on November 29, 2011, Fondren electronically signed her acknowledgement of receipt of the mandatory alternative dispute resolution program known as the ServiceMaster We Listen Dispute

3

Resolution Plan ("We Listen Plan"). (Mem. 1-2, ECF No. 34-1.)[2] The We Listen Plan is a comprehensive early dispute resolution program for all AHS employees that utilizes a three step process consisting of review by a committee of senior executives, mediation by a third party, and arbitration. (Bryant Decl. 9, ECF No. 34-2.) It applies to any claims that allege a violation relating to or arising from the employment relationship, including, by way of example, claims of unlawful discrimination or retaliation based on a protected category. *(Id.* at 8.) All AHS employees were required to participate in the We Listen Plan after January 1, 2009, as a condition of their employment. (*Id.* at 2, 8.)

Fondren does not dispute that she electronically signed acknowledgement of the current We Listen Plan on November 29, 2011, or that the We Listen Plan covers her claims. (Pl.'s Resp. 1, ECF No. 35.) Instead, Fondren argues that she tried to initiate the We Listen Plan but AHS did not allow her to proceed with the dispute resolution plan that AHS now seeks to enforce. (*Id.*) In its reply, AHS contends that any questions about whether or not Fondren previously demanded arbitration or whether she can assert any defense based on inaction by AHS are

---

[2]The motion indicates that "AHS is an indirect subsidiary of ServiceMaster Global Holding, Inc." (*Id.* at 1.)

4

properly resolved by the arbitrator and not the court. (AHS Reply 2, ECF No. 36.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Arbitration Agreement

In ruling on a motion to compel arbitration, the court must first determine whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–307, federal law applies to a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. Thus, the FAA governs any agreement to arbitrate contained in a contract relating to interstate commerce. The term "commerce" for purposes of § 2 of the FAA means "commerce among the several states or with foreign nations." *Id.* § 1. Congress intended this section to apply to all contracts within its power to regulate commerce under Art. 1 § 8, cl. 3 of the Constitution. *See Am. Airlines, Inc. v. Louisville & Jefferson Cty. Air Bd.*, 269 F.2d 811, 815-16 (6th Cir. 1959); *Tenney Eng'g Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 453 (3d Cir. 1953). Specifically excluded are contracts of "employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has held

that this exception "exempts from the FAA only contracts of employment of transportation workers" and not all employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

In the present case, the parties do not dispute that AHS is engaged in interstate commerce. Because Fondren is not engaged in the movement of goods as seamen or railroad workers are, the employment contract at issue here is not excluded from the FAA.

The FAA preempts state law on the issue of arbitrability in dealing with those contracts falling under the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In *Moses H. Cone*, the Supreme Court, affirming a Fourth Circuit judgment enforcing an arbitration clause, stated that the federal act governed the issue of arbitrability of the dispute between parties:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.
> . . .
> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* at 24-25.

"Section 4 of the [FAA] sets forth the procedure to be followed by a district court when presented with a motion to compel arbitration." *Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *1 (W.D. Tenn. Jan. 27, 2011)(citing 9 U.S.C. § 4 & *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).  In relevant part, § 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.

When considering a motion to compel arbitration, the district court has four tasks:

> (1) it must determine whether the parties agreed to arbitrate;
>
> (2) it must determine the scope of that agreement;
>
> (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and
>
> (4) if the court concludes that some, but not all, of the claims are subject to arbitration, it must

7

> determine whether to stay the remainder of the proceedings pending arbitration.

*Sellers v. Macy's Retail Holdings, Inc.*, No. 2:12-CV-02496-SHL, 2014 WL 2826119, at *6 (W.D. Tenn. June 23, 2014)(citations omitted).

In determining whether the parties agreed to arbitrate, ordinary state law principles governing contract formation apply. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007). While "§ 2 of the Act preempts state statutory and case law that treats arbitration agreements differently from any other contract," it also "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Cook Chocolate Co. v. Salomon, Inc.*, 684 F. Supp. 1177, 1182 (S.D.N.Y. 1988). The We Listen Plain contains a Tennessee choice of law provision. (Bryant Decl. 10, Ex. 2, ECF No. 34-2.) Thus, the court must apply Tennessee law to determine if a valid, enforceable contract exists.

Under Tennessee law, a contract is enforceable if there was mutual assent between the parties and sufficient consideration to support the arbitration agreement. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 751 (E.D. Tenn. 2011). A signature on an arbitration agreement evidences assent. *Id.* at 756-57.

8

Further, under Tennessee law, employment constitutes sufficient consideration to support an arbitration agreement. *See Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 894-95 (M.D. Tenn. 2003).

AHS has filed the declaration of Kelley Bryant, Learning Management System Administrator for The ServiceMaster Company, who states that Fondren electronically signed acknowledgement of her receipt of the We Listen Plan pursuant to which she agreed to participate in and be bound by the terms of The We Listen Plan. (Bryant Decl. 2, ECF No. 34-2.) Fondren does not deny signing the agreement, (Pl.'s Resp. 1, ECF No. 35); thus, there is mutual assent. In addition, Fondren's continued employment after signing the We Listen Plan constitutes sufficient consideration. *Fisher*, 276 F. Supp. 2d at 895. Accordingly, the court finds that there is a binding agreement to arbitrate.

Next, the court considers whether all of Fondren's claims in this lawsuit are covered by the arbitration agreement. The scope of the We Listen Plan is broad. It applies to any claims alleging a violation of law arising from the employment relationship, along with specifically mentioning discrimination and retaliation claims. (Bryant Decl. 8, ECF No. 34-2.) Fondren's complaint alleges Title VII discrimination and retaliation claims which relate to her employment with AHS. (Compl., ECF No. 1.) Thus, all of her claims in this lawsuit are covered and arbitrable. Furthermore, the Sixth Circuit law

9

is clear that Title VII claims and retaliation claims are subject to arbitration. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462 (6th Cir. 1999)(recognizing plaintiff in employment discrimination case waives her right to pursue a private cause of action by agreeing to arbitrate); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991)(holding that claims arising under Title VII are subject to arbitration); *Terry v. Labor Ready, Inc.*, No. 02-1034, 2002 WL 1477213, at *3 (W.D. Tenn. July 2, 2002)(compelling arbitration in Title VII case).

In her response to the motion to compel arbitration, Fondren challenges the enforceability of the agreement to arbitrate based on the alleged inaction by AHS when she allegedly attempted to initiate the dispute resolution procedures under the We Listen Plan. She argues that AHS's "failure to co-operate and fully abide by the contract should void the [We Listen Plan]." (Pl.'s Resp. 3, ECF No. 35.) The We Listen Plan contains the following delegation clause:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any Dispute relating to the interpretation, construction, applicability, unconscionability, arbitrability, enforceability or formation of the Plan including, but not limited to, any claim that all or any part of the Plan is void or voidable.

(Bryant Decl. 11, Ex. 2, ECF No. 34-2.)  In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court held that

10

a nearly identical delegation clause in an arbitration agreement grants the arbitrator exclusive jurisdiction to resolve issues of enforceability of a binding arbitration agreement. Thus, whether Fondren previously invoked the We Listen Plan dispute resolution procedures and whether any alleged inaction by AHS precludes arbitration are issues properly resolved by the arbitrator not the court.

Because there is a binding agreement to arbitrate governed by the FAA and AHS is entitled to an order compelling arbitration, the court must determine whether to stay or dismiss this lawsuit pending arbitration. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)(quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *Sellers*, 2014 WL 2826119, at *10-11 (granting motion to compel arbitration and dismissing case without prejudice). As discussed *supra*, all claims in this lawsuit are subject to arbitration; thus, this case should be dismissed without prejudice.

B.  Waiver

Although the sur-reply filed by Fondren on May 21, 2018, will be disregarded, the court will nonetheless consider the issue of whether the participation of AHS in the civil action

11

has waived its right to arbitration. A party may waive its right to arbitrate by "engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Aqualucid Consultants, Inc. v. Zeta Corp.*, 721 F. App'x 414, 418 (6th Cir. 2017)(internal quotations omitted)(citing *Hurley v. Deutsche Bank Trust Co.*, 610 F.3d 334, 338 (6th Cir. 2010)); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003). Both inconsistency and actual prejudice must be found to establish waiver. *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 828 (6th Cir. 2015). "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012)(quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)).

The court first addresses whether AHS took actions that are completely inconsistent with reliance on the arbitration agreement set forth in the We Listen Plan. Before filing the current motion to compel arbitration and to dismiss the complaint, AHS previously filed a motion to dismiss Fondren's complaint or in the alternative for a more definite statement. (ECF No. 28.) The motion to dismiss was based in part on

12

addressing what AHS believed was insufficient service of process, and in part on a request by AHS for the court to dismiss the complaint for failure to state a claim or order Fondren to submit a more definite complaint. (Mem., ECF No. 28-1.) The motion to dismiss or in the alternative for a more definite statement was denied by the court, in favor of Fondren. (ECF No. 32.) All of the previous actions taken in this case related to service of process, including a default judgment that was later set aside due to insufficient service of process. (ECF No. 25.) Considering all of the collective actions taken by AHS, they are not completely inconsistent with any reliance on an arbitration agreement, and are therefore insufficient to waive the right to arbitration.

The court must also address whether AHS delayed its assertion of the arbitration defense to such an extent that Fondren incurred actual prejudice. "There are many ways to establish prejudice, such as showing that a party waited until a statute of limitations expired to invoke arbitration, or showing harm to a party due to lengthy delays and costly discovery." *Aqualucid*, 721 F. App'x at 418 (citing *O.J. Distrib., Inc.*, 340 F.3d at 358). "Without discovery or any significant advancement in the litigation, Plaintiffs likely wasted relatively few resources on unnecessary litigation due to Defendants' delay." *Id.* at 418 (quoting *Shy*, 781 F.3d at 830). Although there was

13

some delay in this case before AHS asserted its arbitration defense, much of the delay was related to service of process disputes. There has been no discovery or other significant advancement in the litigation. Additionally, the previous motion to dismiss filed by AHS was denied by the court, resulting in no prejudice to Fondren. There is no evidence that Fondren has incurred actual prejudice as a result of a delayed assertion by AHS of the right to arbitration.

Because AHS did not take actions that are completely inconsistent with any reliance on the arbitration agreement, or delay its assertion of the arbitration defense to such an extent that Fondren incurred actual prejudice, AHS did not waive its right to arbitration.

### III. RECOMMENDATION

For the reasons stated above, the court finds that a valid arbitration agreement exists between Fondren and AHS, that the current dispute between the parties falls within the scope of that agreement, that Congress has not excluded any of Fondren's federal claims from arbitration, that the arbitrator and not the court should properly resolve whether Fondren can assert any defense based on inaction by AHS, and that AHS did not waive its right to arbitration. Accordingly, it is recommended that AHS's motion to compel arbitration be granted, that Fondren be

required to submit her claims against AHS to the We Listen Plan, and that Fondren's lawsuit be dismissed without prejudice.

Respectfully submitted this 28th day of June, 2018.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.